[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14874
Non-Argument Calendar

_____

D.C. Docket No. 6:14-cr-00058-RBD-DAB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TANYA M. FOX,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 11, 2015)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Tanya M. Fox appeals her 240-month sentence, imposed after a jury convicted her of 26 charges related to a tax fraud scheme, including conspiracy to defraud the United States by filing false tax returns, 18 U.S.C. § 286; wire fraud, 18 U.S.C. §§ 2 and 1343; theft of government property, 18 U.S.C. §§ 2 and 641; and aggravated identity theft, 18 U.S.C. §§ 2 and 1028A. On appeal, Ms. Fox argues that the district court erred in calculating her total sentence because it failed to state with sufficient particularity the factual basis for its application of (1) a six-level enhancement based on the number of victims under U.S.S.G. § 2B1.1(b)(2)(C), and (2) a two-level enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C). After review of the record and the parties' briefs, we affirm Ms. Fox's sentence. We remand, however, for the limited purpose of correcting a clerical error in the judgment.

## I

A jury convicted Ms. Fox of 26 charges related to a massive tax fraud scheme. The presentence investigation report provides the following general facts, to which Ms. Fox did not object at sentencing. Ms. Fox owned "1 Man at Large Accounting," a tax service business in Orlando, Florida. She used her business to file false tax returns. Ms. Fox also recruited several co-conspirators, including two individuals who worked at the Orange County Health Department, to help her

2

obtain lists of names, dates of birth, and Social Security numbers. She then used this stolen personal information to file the false tax returns.

The IRS identified 3,592 false tax returns and 3,023 different victims of Ms. Fox's fraudulent scheme. More than 1,640 victims were 16 to 18 years old when a fraudulent tax return was submitted using their name and Social Security number. More than $1 million in paper refund checks were sent directly to Ms. Fox's tax service business, and the IRS identified 25 different bank accounts that received an additional $3 million or more as a result of Ms. Fox's fraudulent scheme. The presentence investigation report stated that the IRS actually lost more than $4 million, and that Ms. Fox had intended to fraudulently obtain an additional $1.8 million, for a total tax loss of $5.8 million.

Ms. Fox had a base offense level of seven under U.S.S.G. § 2B1.1(a)(1)(A). She received an additional 18 levels for the loss amount under § 2B1.1(b)(1)(J), and a four-level role enhancement under § 3B1.1(a). She also received an additional six levels under § 2B1.1(b)(2)(C), because the offense involved more than 250 victims, and an additional two levels for a sophisticated means enhancement under § 2B1.1(b)(10)(C). Her total offense level was therefore 37, and she had a criminal history category of II, resulting in an advisory Guidelines range of 235 to 293 months' imprisonment.

Ms. Fox objected to the six-level enhancement for the number of victims, arguing that the IRS was the sole victim in her scheme.  She also objected to the sophisticated means enhancement because her fraud scheme was "nothing more than a garden variety . . . identity theft income tax fraud case."  The district court overruled the objections and sentenced Ms. Fox to 240 months' imprisonment: 120 months for the conspiracy to defraud the United States and theft of government property counts, 216 months concurrently on the wire fraud counts, and 24 months consecutively on the aggravated identity theft counts.  Ms. Fox did not raise additional objections following the district court's judgment.

At issue in this appeal are the enhancements for the number of victims and sophisticated means.  We address each one below.

## II

We review claims that the district court erroneously applied the Sentencing Guidelines under a two-pronged approach.  *See United States v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008).  We review factual findings for clear error.  *See id.* And we review the district court's application of the facts to the Guidelines de novo.  *See id.* at 1247-48.

But if claims are not preserved below, we review only for plain error.  *See United States v. Rodriguez,* 398 F.3d 1291, 1298 (11th Cir. 2005).  "To preserve an issue at trial for later consideration by an appellate court, one must raise an

objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986) ("A general objection or an objection on other grounds will not suffice.").

## A

We first review Ms. Fox's argument regarding the district court's six-level enhancement for the number of victims. A district court's factual finding on the number of victims is reviewed for clear error. *See United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013).

At sentencing, Ms. Fox objected that the IRS was the only victim that suffered a pecuniary loss. Ms. Fox acknowledged that, although "there were far more than 250 individuals who were, for lack of a better word, victims of the aggravated identity theft," the enhancement should not apply to her case because the government was the sole victim. The district court told the government not to respond because Ms. Fox's argument was foreclosed by precedent (which the district court did not identify).

On appeal, Ms. Fox argues that the district court erred because it did not require the government to present evidence supporting the enhancement prior to ruling on her objection. She also argues that the district court made no explicit factual findings supporting the enhancement. Ms. Fox, however, never objected on

5

evidentiary grounds below.   Nor did she object to the district court's factual findings.  *See United States v. Smith*, 231 F.3d 800, 820 (11th Cir. 2000) (holding that it was "too late now to complain in this court" after the defendant had failed to "request more specific findings of fact by the district court").

Even if we were to assume (without deciding) that Ms. Fox's argument is properly preserved, it lacks merit.  Ms. Fox did not object to any of the facts in the presentence investigation report, which stated that the IRS identified "3,203 different victims" of Ms. Fox's tax fraud scheme, including "1,642 individual victims" between the ages of 16 and 18.  And we have held that a district court can rely on undisputed factual statements in a presentence investigation report when it makes findings of fact.  *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).  The Sentencing Guidelines provide for a six-level enhancement if the crime involves more than 250 victims, and define "victim" as "any person who sustained any part of the actual loss."  § 2B1.1 cmt. n.1.  When a case involves the theft of means of identification, a victim is also "any individual whose means of identification was used unlawfully or without authority."  § 2B1.1 cmt. n.4(E).  We have therefore affirmed a district court's application of the 250 or more victims enhancement based upon an undisputed presentence investigation report that indicated that more than 250 Social Security numbers were used to file false tax returns and obtain fraudulent tax refunds.  *See United States v. Philidor*, 717 F.3d

883, 885-86 (11th Cir. 2013).   Based on *Philidor*, we affirm the district court's application of the six-level enhancement for 250 or more victims.

**B**

Next, we review Ms. Fox's argument that the district court erred in applying the two-level sophisticated means enhancement because her tax fraud scheme was a garden-variety scheme.   She contends that the district court erred because it applied the enhancement without making a specific factual finding that her tax fraud scheme was especially sophisticated when compared to other tax fraud schemes.   The government, on appeal, argues that she failed to raise these precise objections before the district court.

We assume (again without deciding) that Ms. Fox's arguments are properly preserved.   As relevant here, § 2B1.1(b)(10)(C) provides a two-level enhancement if the offense of conviction involved sophisticated means, which is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."   § 2B1.1 cmt. n.9(B) (stating that the enhancement includes "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts").   The enhancement is based on the totality of the scheme, and not each individual action that a defendant takes.   *See United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).   *See also United States v. Campbell*, 491 F.3d 1306, 1315 (11th Cir.

7

2007) (affirming the district court's application of the enhancement where an elected official used "campaign accounts and credit cards issued to other people to conceal cash expenditures in a deliberate attempt to impede the discovery of both the existence and the extent of his tax fraud") (internal quotation marks omitted). We review the district court's factual finding for clear error. *See United States v. Dimitrovski*, 782 F.3d 622, 629 (11th Cir. 2015).

The district court ruled that the enhancement was warranted because Ms. Fox recruited others to help her, used co-conspirators who worked for a government agency, and acquired stolen identifies and completed the fraudulent returns using a methodology designed to avoid IRS detection—something the district court termed "the sweet spot."  The district court agreed with the government that it was significant that Ms. Fox had opened fictitious businesses to funnel fraudulent tax returns into the businesses' bank accounts, and that Ms. Fox relied upon a number of people to help her obtain stolen identities, file false tax returns, and cash tax return checks.  Finally, the district court also found that Ms. Fox's scheme was not unsophisticated simply because criminals conduct similar tax fraud schemes around the country.  Although Ms. Fox argues that her scheme was common, she does not dispute any of the underlying facts, many of which were designed to hide her massive tax fraud scheme.  On this record, the district court did not clearly err by applying the sophisticated means enhancement.

8

## III

Finally, although we affirm Ms. Fox's sentence, there is a clerical error in the judgment. The jury convicted Ms. Fox of Count 3, which charged the crime of wire fraud in violation of 18 U.S.C. §§ 2 and 1343. The judgment, however, mistakenly lists 18 U.S.C. § 3 (referring to accessories after the fact), instead of 18 U.S.C. § 2 (referring to principals). "We may *sua sponte* raise the issue of clerical errors in the judgment and remand with instruction that the district court correct the errors." *United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998). On remand, the district court shall correct the clerical error in Ms. Fox's judgment.

**AFFIRMED AND REMANDED FOR CORRECTION OF CLERICAL ERROR.**