[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10644
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cr-00055-CEM-KRS-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERNESTO CABANAS-TORRES,
a.k.a. Peluca,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 16, 2017)

Before MARCUS, MARTIN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Ernesto Cabanas-Torres appeals his 151-month sentence, imposed after he pled guilty to conspiring to distribute and to possess with intent to distribute one kilogram or more of heroin.  On appeal, he challenges the amount of drugs attributed to him by the district court.  After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts[1]

At some point between November 2013 and February 2016, Defendant joined a drug trafficking organization known as "La Compania."  The organization used a telephone number referred to as the heroin line to sell heroin to individuals in the tourist area of Orlando, Florida.  After law enforcement officers arrested one of the organization's leaders in February 2015, Defendant assumed a leadership role in the conspiracy.  In particular, Defendant controlled the heroin line, directed the activities of other coconspirators, and permitted coconspirators to use his barbershop for meetings and to receive heroin.  On seven separate occasions, Defendant sold to undercover agents and confidential informants a total of 457 baggies of heroin, which totaled $4,570.

Defendant admitted to being responsible for at least one kilogram of heroin based on his conduct and the reasonably foreseeable conduct of his coconspirators.

---

[1]  These facts are taken from those agreed to by Defendant in his plea agreement.

2

Moreover, law enforcement officers conservatively estimated that the organization sold approximately one kilogram of heroin every two weeks.

### B.    Procedural History

In October 2016, Defendant pled guilty pursuant to a written plea agreement to conspiring to distribute and to possess with intent to distribute a controlled substance, namely one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.

In anticipation of sentencing, the probation officer prepared the Presentence Investigation Report ("PSR").  The PSR assigned Defendant a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3) because it found Defendant responsible for at least 10 but less than 30 kilograms of heroin.  He also received a three-level enhancement under U.S.S.G. § 3B1.1(b) because he was a manager or supervisor of a criminal conspiracy involving five or more participants.  With a three-level reduction for acceptance of responsibility, Defendant's total offense level was 34. Based on a total offense level of 34 and a criminal history category of I, his guideline range was 151 to 168 months' imprisonment.  Defendant objected to the base offense level assigned by the PSR, arguing that he was responsible for no more than one kilogram of heroin.

At the sentencing hearing, Defendant admitted that he was responsible for at least 1 kilogram of heroin but less than 10 kilograms.  Conrad Henry, a special

3

agent with the Drug Enforcement Administration, testified that based on Defendant's time as a leader of the conspiracy, his coconspirators' reports about the volume of weekly heroin sales, and laboratory reports regarding the quantities of heroin actually seized, Defendant was responsible for distributing 28.7 kilograms of heroin. Defendant objected to Agent Henry's testimony, asserting that it was unreliable and based on conjecture. The district court overruled the objection and concluded that the Government established by a preponderance of the evidence that Defendant was responsible for at least 10 kilograms of heroin and that the base offense level of 34 applied. Consequently, the district court sentenced Defendant to 151 months' imprisonment. This appeal followed.

## II.    **DISCUSSION**

Defendant argues that the district court erred in calculating his base offense level by concluding that he was responsible for between 10 and 30 kilograms of heroin. He also asserts that Agent Henry's testimony based on the hearsay statements of Defendant's coconspirators was unreliable.

We review the district court's determination of the quantity of drugs attributable to a defendant for clear error. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). The Government bears the burden of establishing the drug quantity attributable to a defendant by a preponderance of the evidence. *Id.* The district court's factual findings at sentencing may be based on facts admitted

4

by a defendant's guilty plea, undisputed PSR facts, or evidence presented at a sentencing hearing. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

Here, the district court did not clearly err in calculating Defendant's base offense level based on its determination that Defendant was responsible for at least 10 kilograms of heroin. The district court noted that its drug quantity determination was based on the evidence presented at the sentencing hearing, and more notably on the facts Defendant agreed to in the plea agreement. In fact, the court stated that, even without the evidence presented at the sentencing hearing, the Government had established by a preponderance of the evidence that Defendant was responsible for more than 10 kilograms of heroin. The plea agreement—which Defendant signed and did not object to—stated that he was a leader of the conspiracy for 54 weeks, and that during that time "an extremely conservative estimate of the heroin sold by the [drug-trafficking organization] was 1 kilogram of heroin every two weeks." Selling 1 kilogram of heroin every 2 weeks for 54 weeks amounts to a total sale of approximately 27 kilograms of heroin—which is well within the range of 10 to 30 kilograms required for assigning a base offense level of 34 under § 2D1.1(c)(3). *See United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005) (explaining that the district court is permitted to estimate the quantity of drugs attributable to a defendant, as long as the estimate is fair, accurate, and conservative, and the court may use evidence showing the average

frequency and amount of the drug sales over a specific period); *see also* U.S.S.G. § 2D1.1(c)(3).

Moreover, the PSR facts—to which Defendant did not object—likewise stated that Defendant led the drug trafficking organization for 54 weeks—from February 6, 2015 through February 24, 2016—and that the organization distributed 1 kilogram of heroin every 2 weeks, which amounts to approximately 27 kilograms of heroin during Defendant's leadership. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("Failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes.").

Further, Agent Henry testified at the sentencing hearing that Defendant was responsible for distributing approximately 28.7 kilograms of cocaine based on the amount of time Defendant served as leader of the drug trafficking organization, his coconspirators' reports about the volume of weekly heroin sales, and laboratory reports pertaining to the quantities of heroin seized in this case. Although Defendant argues that Agent Henry's testimony was unreliable hearsay, we need not even consider this argument because the district court determined, and we agree, that the stipulated facts in the plea agreement—alone—were sufficient to establish the drug quantity amount by a preponderance of the evidence. *Wilson*, 884 F.2d at 1356.

Nevertheless, to the extent the district court relied on Agent Henry's hearsay testimony, it did not err by doing so because the reliability of that testimony is apparent from the record. *United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (concluding that a court's failure to make explicit findings about the reliability of hearsay testimony does not require reversal when the reliability is apparent from the record). Indeed, the testimony bore a "minimal indicia of reliability," as it closely tracked the un-objected to facts set forth in the PSR, as well as the facts Defendant admitted to in the plea agreement. *United States v. Reme*, 738 F.2d 1156, 1167 (11th Cir. 1984) (concluding that hearsay relied on at sentencing need only have a "minimal indicia of reliability"); *see also United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) ("[A] court may rely on hearsay at sentencing, as long as the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence."). The district court also listened to Defendant's argument pertaining to the reliability of Agent Henry's testimony and Defendant had the opportunity to cross-examine Agent Henry. *See Anderton*, 136 F.3d at 751. In short, we cannot say based on this record that the district court's determination that Defendant was responsible for at least 10 but less than 30 kilograms of heroin was clearly erroneous.

Accordingly, Defendant's sentence is **AFFIRMED.**